# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:09-00186-14 |
| | ) | Judge Trauger |
| SIXTO ARELLANO-GARCIA | ) | |
| | ) | |

## MEMORANDUM and ORDER

The government has filed Motion In Limine No. 1 (Docket No. 474), to which the defendant has responded in opposition (Docket No. 482), and the government has filed a Reply (Docket No. 483).

In this motion, the government seeks to introduce evidence of the defendant's drug distribution-related activities in the summer of 2008 and the defendant's state convictions for offenses committed during that time frame. The time frame of the conspiracy alleged in the Third Superseding Indictment (Docket No. 342) is "Beginning not later that in or about October 2008, the exact date being unknown to the Grand Jury, through on or about August 14, 2009."

The government's first argument is that the summer 2008 drug-related activities of the defendant should come in as direct proof of the conspiracy alleged, because the activity was only a few months before the beginning date of the conspiracy. This argument is not persuasive because the government was well aware, at the time that the Grand Jury returned the Third Superseding Indictment on March 31, 2010 that the defendant had engaged in the alleged activities in the summer of 2008 and yet did not change the beginning date of the conspiracy. Moreover, although there are some common co-conspirators in the summer of 2008, the most crucial player at that time was Roberto Moises Varela Rodriguez ("Valera"), from whom a

1

confidential informant purchased cocaine on July 16, 2008. This individual is not alleged to be a co-conspirator in this case, even though the government was well aware of his involvement with the defendant during the summer of 2008. The defendant was convicted of crimes in connection with his activities in the summer of 2008 and was deported on October 6, 2008, the approximate beginning date of the conspiracy charged in this case. The defendant allegedly was back in Nashville in the summer of 2009, when his recorded telephone conversations with co-conspirators and other activities place him within the charged conspiracy.

The second ground for the admission of the defendant's summer 2008 activities is as "background evidence" or *res gestae* (although the government does not call it by this term). Evidence admissible under this ground "consists of those acts or items which are 'inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'" *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003) (internal quotations omitted). The seminal case on this issue is *United States v. Hardy*, which states:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

228 F.3d 745, 748 (6th Cir. 2000). The court does not find that this evidence is properly admissible *res gestae*.

The third ground advanced by the government for the admission of this evidence is Rule 404(b) of the FEDERAL RULES OF EVIDENCE, in order to prove the defendant's intent, knowledge and identity. In order to admit this evidence under Rule 404(b), the court must engage in a three-step analysis. *United States v. Bell*, 516 F.3d 432, 440-44 (6th Cir. 2008). The first step is

"whether there is sufficient evidence to show that the defendant committed the other acts." The second step is whether the evidence is "admissible for a legitimate purpose." And the third step is for the court to decide "whether the prejudicial impact of the proffered evidence substantially outweighs its probative value." *Id*.

The government contends that cooperating co-defendant Ernesto Jaimes Aguilar ("Neto") will testify that he delivered cocaine to the defendant and collected proceeds from drug sales from the defendant between May and August of 2008. Apparently "Neto" will identify the defendant in the courtroom in connection with these acts. Therefore, the court finds that a jury could "reasonably conclude" that these activities took place and that the defendant was involved in them.

The second step requires a three-part inquiry. The evidence must be offered for an admissible purpose, which is material or in issue, and the evidence is probative for that purpose. *Bell*, 516 F.3d at 441-42. (internal citations omitted) The government is correct that, because the drug conspiracy count requires proof of specific intent to distribute, the proof may be offered for purposes of intent. However, there is no indication that the defendant will put into issue knowledge or identity. Defense counsel asserted as much at the pretrial conference and requested that the court not presume that the defendant would place identity in issue until the trial. The court finds, on the basis of the material before the court at this time, that the evidence would be admissible for the purposes of proving specific intent to distribute but not to prove knowledge or identity. The court further finds that the evidence would be material to proving an intent to distribute and that the evidence would be probative of that purpose.

The final part of the analysis requires that the court "weigh the probative value of the evidence against its prejudicial effect," . . . being mindful of the fact that, "[w]hen jurors hear

that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact." *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). Factors to consider in this weighing process include "the availability of other means of proof" and "whether the 'reverberating clang' of the evidence" . . . will lead the jury to conclude that "if the defendant did it before, he probably did it again." *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996). (internal citations omitted)

The court concludes that, on the basis of the information presently available, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to the defendant. The availability of other means of proof weighs heavily in the court's analysis. First, the mere quantity of drugs about which the jury will hear proof may well be sufficient, in itself, to establish an intent to distribute. *See United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984), cited in *Bell*, 516 F.3d at 446. In addition, as to identity, the government proffers that it has two cooperating co-conspirators who will identify the defendant's voice on the recorded conversations, and these defendants will be allowed to testify that they know the defendant and have heard him speak in person to establish their knowledge of his voice. Whether the jury will be satisfied by the testimony of these two co-conspirators that the voice on the recorded conversations is the defendant will depend upon the credibility of these two witnesses. If the jury does not find them credible, it will add little to the government's case to have one of these witnesses testifying to events involving the defendant in the summer of 2008, in order to establish the identity of the defendant as a member of this conspiracy during the dates charged. The jury either will believe this witness of not believe this witness.

For all these reasons, the court declines to allow the admission of the defendant's actions

in the summer of 2008 as Rule 404(b) evidence. Should the identity of the defendant be squarely put in issue or the court determines that the government does not have available to it other means of proof of specific intent to distribute, the court will revisit this ruling. However, the court is mindful that Rule 404(b) evidence is more likely to be prejudicial where the government's proof is weak and the only "real evidence" offered to establish a necessary element of proof is furnished by the Rule 404(b) evidence. *See United States v. Jenkins*, 345 F.3d 928, 939 (6th Cir. 2003).

The court has not separately addressed the government's motion to be allowed to introduce evidence of the defendant's possession of an SKS assault rifle on July 16, 2008 as "directly probative of his ability to procure another assault rifle again in 2009." (Docket No. 474 at 15) The court finds this to be classic propensity evidence that is inadmissible on any ground. Whether or not the defendant's possession of an assault rifle in July of 2008 corroborates the identification of him as the person discussing selling a different kind of assault rifle to a co-conspirator a year later, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice to the defendant.

The government also seems to be requesting that this court approve, in advance, the admissibility of the defendant's 2008 state convictions for felony sale of cocaine and misdemeanor unlawful possession of a weapon, the convictions that caused him to be deported in October 2008. Obviously, if the defendant testifies, the admissibility of these convictions will be addressed by the court. However, the government seems to be asserting that these convictions are somehow independently admissible, not simply as impeachment evidence if the defendant testifies. The government has advanced no authority for the independent admissibility of these convictions, should the defendant not testify, and the court knows of no such authority.

For the reasons expressed herein, the government's Motion In Limine No. 1 is **DENIED**.

It is so **ORDERED**.

ENTER this 26th day of October 2010.

_____
ALETA A. TRAUGER
U.S. District Judge